IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LANCE MAURICE A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil No. 20-cv-226-MAB |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.[2]

## Procedural History

Plaintiff applied for DIB in May 2016, alleging a disability onset date of May 4, 2015. After holding an evidentiary hearing, an ALJ denied the application in January 2019. (Tr. 20-28). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*See* Doc. 8).

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.       The ALJ erred by failing to build a logical bridge between the evidence and his RFC determination.

2.       The ALJ erred in his evaluation of the medical opinions.

3.       The ALJ erred in his evaluation of Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows

2

an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2020. He was 41

years old on the alleged date of disability. The ALJ found that Plaintiff had severe

impairments of lymphedema of the lower extremities and obesity.[3]

The ALJ found that Plaintiff had the RFC to do light work limited to standing or

walking no more than two hours in an eight-hour day; sitting for about six hours during

an eight-hour day; occasional pushing or pulling with his bilateral lower extremities; no

climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs;

occasional balancing, stooping, kneeling, crouching, and crawling; and no exposure to

hazards such as unprotected heights and dangerous moving machinery.

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff

could not do his past relevant work as an animal caretaker. However, he was not

disabled because he was able to do other jobs that exist in significant numbers in the

national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

preparing this Memorandum and Order. The following summary of the record is

directed to the points raised by Plaintiff.

### 1.    Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing in August 2018. (Tr. 36).

Plaintiff's counsel stated that Plaintiff was diagnosed with prostate cancer and

---

[3] "Lymphedema refers to swelling that generally occurs in one of your arms or legs. Sometimes both arms or both legs swell. Lymphedema is most commonly caused by the removal of or damage to your lymph nodes as a part of cancer treatment. It results from a blockage in your lymphatic system, which is part of your immune system. The blockage prevents lymph fluid from draining well, and the fluid buildup leads to swelling." https://www.mayoclinic.org/diseases-conditions/lymphedema/symptoms-causes/ syc-20374682, visited on October 26, 2020.

had his prostate removed in June 2015. Thereafter, he developed lower extremity edema and venous symptoms. In March 2018, he was found to have metastatic prostate cancer. Counsel argued that, because of the edema, Plaintiff was not able to maintain any type of fulltime employment. (Tr. 38-39).

Plaintiff testified that he had radiation treatments through late June 2018, and he had no side effects. His main issue was the swelling in his legs. He first noticed it in September 2015 when he tried going back to work. (Tr. 45). He said he had pain in his right leg all day, for which he took Tylenol. He could stand for only about 30 minutes and then had to get off his feet. He could sit for only about 30 minutes and had to keep changing positions. He wore compression stockings all day. He used a pump on each leg for an hour in the morning and an hour before bed. (Tr. 46-47).

Plaintiff testified that he elevated his legs for 2 or 3 hours a day. He used a wedge pillow to elevate his legs a little higher than a chair. His right leg was worse than the left. The right leg was always swollen, more around the knee area and ankle. (Tr. 51-52).

Plaintiff's daughter weighed 35 pounds. Plaintiff said he could pick her up if she got on the stairs so that he did not have to bend his knees. (Tr. 52).

A VE testified that a person who had to elevate his legs to waist level for 2 hours during the workday could not maintain employment. (Tr. 56).

### 2.    Relevant Medical Records

Plaintiff's prostate was removed in June 2015. (Tr. 257).

Plaintiff saw his primary care physician, Dr. Tracy Norfleet, in August 2015 for swelling of his right leg. On exam, he had "mild noticeable swelling of right lower leg."

It was nontender. She ordered testing. A Doppler study showed no evidence of deep vein thrombosis. (Tr. 460-462, 484). Plaintiff saw PA Suzanne Million in Dr. Norfleet's office in September 2015 for continued swelling in the right leg. She ordered physical therapy. About two weeks later, after two PT sessions, Plaintiff told PA Million that he did not think it was much better and he did not think he could return to work without his leg swelling. Her impression was "Ongoing right LE lymphedema. Continue PT. Will extend FMLA." (455-458).

Plaintiff attended PT in September and October 2015. Treatment include the use of a vasopneumatic device.[4] It was noted that he may benefit from a home compression pump. (Tr. 326-277).

In October 2015, Dr. Norfleet noted 2+ pitting edema on the right lower leg.[5] (Tr. 452-454). PA Million saw Plaintiff in December 2015. He said his leg was mildly swollen in the morning and it got a little worse as the day went on, especially if he stood for any length of time. He complained of discomfort in the right foot/calf, knee, and groin. He had been wearing a compression garment. On exam, he had trace pitting edema in the right leg and mild pitting edema in the right calf. She referred him back to PT for consideration of a compression pump and extended his FMLA leave for two more months. (Tr. 449-451).

---

[4] "Vasopneumatic devices are machines designed to pump cold water into an inflatable wrap or brace, compressing the enveloped area of the body. This form of treatment is common among physical therapy practices, and has been proven effective in reducing swelling in the applied area." https://cwptyakima.com/articles/vasopneumatic-device/, visited on October 26, 2020.

[5] "To determine the extent of the pitting edema, your doctor will push on your skin, measure the depth of the indention, and record how long it takes for your skin to rebound back to its original position." A four point scale is used. 1+ denotes "2 millimeter (mm) depression, or barely visible" with immediate rebound. 2+ denotes "3-4 mm depression, or a slight indentation" with rebound in 15 seconds or less. https://www.healthline.com /health/pitting-edema#diagnosis, visited on October 26, 2020.

In January 2016, Plaintiff told Dr. Norfleet he had tried to return to work, but his job required him to stand all day which exacerbated the swelling. He said that elevating his legs relieved the swelling. On exam, he had 1+ nonpitting swelling in the right leg. He was awaiting a compression pump from PT. (Tr. 446-448).

Plaintiff had another round of eleven PT visits from January to March 2016. (Tr. 378-432). He got a compression pump to use at home. He was to wear a compression garment during the day and a wrap at night. He said that foot and ankle pain limited him to only a couple of hours of standing. (Tr. 431).

Dr. Zayed, a vascular surgeon, saw Plaintiff in February 2016 for swelling in his legs. Plaintiff told him that wearing non-custom knee-high stocking helped, and that elevating his legs caused the swelling to subside. On exam there was 1+ edema in the left lower leg and foot, and trace edema in the right ankle. There was no buffalo humping in the left foot or sausage-like appearance of the left toes. Muscle strength was full, and gait was normal. Dr. Zayed described his symptoms as "quite minimal" and recommended a trial of custom fit graded compression stockings. (Tr. 275-276).

At his annual physical in March 2016, Plaintiff told Dr. Norfleet his edema was improved but not resolved. He was using a pump one hour a day and elevated his legs daily. (Tr. 441). In June 2016, Dr. Norfleet noted 1+ pitting edema of both legs. He was to continue using compression stockings and the pump. (Tr. 434-436).

In May 2017, Dr. Norfleet changed Plaintiff's blood pressure medication as it might be contributing to his leg edema. (Tr. 529). One week later, his blood pressure was better. On exam, he had trace nonpitting edema on the left and 1+ nonpitting edema on

the right. He was to consult a vascular surgeon. (Tr. 524-526). In December 2017, at his

annual physical, Dr. Norfleet noted trace edema in the legs. (Tr. 520-521).

Dr. Zayed saw Plaintiff again in February 2018 for a follow-up evaluation.

Plaintiff said that his right leg continued to be painful and he was getting swelling in

both lower legs. On exam, he had mild edema in both lower legs extending into the calf

and ankle regions. Dr. Zayed recommended a venogram to investigate the cause of the

swelling. (Tr. 534-535).

In March 2018, Dr. Norfleet noted that Plaintiff had been diagnosed with

metastatic prostate cancer and was to begin radiation therapy. She told him to continue

the use of compression hose and the pump for his leg edema. (Tr. 521-523)

### 3.    PA Million's Opinion

In September 2018, PA Million completed a form assessing Plaintiff's RFC at the

request of Plaintiff's attorney. Among other limitations, PA Million indicated that it was

medically necessary for Plaintiff to elevate his legs at or above waist level for 2 to 4 hours

out of an 8-hour workday, and that he would be likely to miss more than 4 days of work

per month. (Tr. 543-545).

### 4.    State Agency Consultants' Opinions

In November 2016 and February 2017, two state agency consultants assessed

Plaintiff's RFC based on a review of the record. (Tr. 66-68, 77-80). The ALJ's assessment

corresponded to their assessments.

### Analysis

The common theme of Plaintiff's arguments is that the ALJ erred by not finding

8

that he is required to elevate his legs for 2 to 3 hours a day, which would preclude all work according to the VE's testimony.

The ALJ said that he rejected Plaintiff's testimony that he has to elevate his legs for 2 to 3 hours each day, pointing out that "there is no evidence the claimant's treatment providers recommended the claimant elevate his legs at all, let alone to this frequency." (Tr. 25).

Plaintiff criticizes the ALJ's statement but does not argue that it is incorrect. That's because it is, in fact, correct. The medical records contain no recommendation by any healthcare provider that Plaintiff elevate his legs.

Citing articles from the Mayo Clinic and "UpToDate," Plaintiff argues that elevation to relieve edema is a common medical practice. From this, he extrapolates that it would be illogical for his doctors to recommend the use of a compression pump without first recommending that he elevate his legs. He points out that he told his doctors that he elevated his legs to relieve swelling and they did not instruct him to discontinue that practice.

Remarkably, Plaintiff accuses the ALJ of "playing doctor" when that is precisely what he is inviting the Court to do. Elevating the legs may be a common practice to relieve swelling, but that does not mean that this Plaintiff must elevate his legs for 2 to 3 hours during the workday. Plaintiff's doctors may or may not have recommended that he try elevating his legs before they recommended using a compression pump; the records do not document that they did. Regardless, there is no evidence that any healthcare provider advised Plaintiff to continue elevating his legs *in addition to* wearing

9

custom compression stockings and using a compression pump.

Plaintiff criticizes the ALJ for pointing out that he has normal strength in his legs and intact sensation in his feet, arguing that those findings are not connected to the alleged need to elevate his legs. However, the ALJ did not make the connection. Rather, the ALJ cited those normal findings in support of his conclusion that "overall, the alleged intensity, persistence and limiting effects of the claimant's impairments are not consistent with the objective medical and other evidence." (Tr. 25).

Plaintiff's argument about PA Million's opinion is no stronger. As a physician's assistant, under the applicable regulation, she is not an "acceptable medical source." 20 C.F.R. § 404.1513(a). As such, her report does not constitute a "medical opinion." *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources. . . .)" Further, her report does not qualify as a "treating source" opinion and is not entitled to any special weight under § 404.1527(c). SSR 06-03p, 2006 WL 2329939, at *2.

Although of limited effect, the ALJ was required to consider PA Million's opinion, which he did. The ALJ is required to consider "all relevant evidence" and may, as appropriate, consider the factors set forth in § 404.1527(c) in the process of weighing the opinions of nonacceptable medical sources. SSR 06-3p, at * 4-5.

Plaintiff faults the ALJ for saying that it is unclear how frequently Ms. Million saw Plaintiff or the extent of the treatment she provided. He points out that he saw her three times, twice in September 2015 and once in December 2015, and that she ordered PT. He also points out that she ordered cardiac tracing in March 2016 and other testing in April

2016. He accuses the ALJ of lacking the required familiarity with the record. (Doc. 13, pp. 15-16). On the contrary, Plaintiff's argument disproves his conclusion. The record does not explain why PA Million would have ordered testing in 2016 when she last saw him in December 2015 and is therefore unclear as to how many times she saw him and what treatment she rendered.

Plaintiff ignores the other reason given by the ALJ for rejecting PA Million's opinion, that it was inconsistent with and not supported by the record as a whole. The ALJ pointed out that physical exams generally showed only mild edema. And, the ALJ had previously explained that there was no evidence that Plaintiff's treaters recommended that he elevate his legs. There is simply no support in the record for PA Million's opinion that it is medically necessary for Plaintiff to elevate his legs at or above waist level for 2 to 4 hours out of an 8-hour workday or that he would be likely to miss more than 4 days of work per month.

Plaintiff also takes issue with the greater weight the ALJ assigned to the state agency consultants' opinions. His argument relies on a faulty premise, that the state agency consultants were required to discuss Plaintiff's need to elevate his legs. The consultants discussed the medical evidence, but the record contains no medical evidence that Plaintiff needs to elevate his legs. Further, Plaintiff's arguments about the opinion evidence assumes that the ALJ had to choose a medical opinion as the basis for his RFC determination. That is incorrect. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Lastly, Plaintiff argues the ALJ erred in evaluating the reliability of his allegations. In large part, he adopts the arguments made under his first two points. For

11

the reasons explained above, the Court rejects those arguments. He also argues that the ALJ erred in rejecting his testimony because he was able to lift his 35 pound daughter without considering the qualification that he could pick her up if she got on the stairs so he did not have to bend down.

The ALJ considered the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529, including the consistency of Plaintiff's allegations with the rest of the record. He noted that exams generally showed mild edema, many of the physical findings were normal, no treater advised him to elevate his legs for 2 to 3 hours a day, and his treatment was conservative. (Tr. 25). Plaintiff faults him for that last observation, but the regulation directs the ALJ to consider the nature of the treatment, and his characterization was correct. The ALJ did not place undue weight on Plaintiff's ability to pick his daughter up. Further, whether Plaintiff had knee pain if he bent all the way down to pick her up is a red herring. An inability to do so would not bolster Plaintiff's claim about the need to elevate his legs, which is the primary focus of his arguments.

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence.

Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's

application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATE: October 26, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**

13